PROVOSTY, J.
Defendant wrote to plaintiffs the following letter:
“New Orleans, February 7th, 1901.
“Messrs. Stewart & Co., Plaquemine, La.— Gentlemen: I hereby propose to handle all the Prophet’s Island Gravel (run of the bar, or washed gravel) shipped by you into this-City, which we estimate will be four thousand cubic yards per month.
“All barges to be consigned to- m'e and delivery to me to be made at such points in the City of New Orleans, on the river front, 'as-directed by me, and I am to provide a suitable place for their unloading so there will be no delay in unloading on their arrival in New Orleans.
“Gravel to be sold for at least One dollar and thirty-five cents ($1.35) per cubic yard, unless hereafter -agreed.
“I to be paid at the rate of ten cents per cubic yard commission, and to have the entire sale and consignment of said gravel, and to make collections for same when sold, and when collected shall make remittance to-Stewart & Co., at Plaquemine.
“All gravel to be measured in barges, and *253 accounting therefor hy me to be made from such measurements.
“It being fully understood that if any wharf or port charges are paid at any time they shall be at the expense and costs of Stewart & Co.
“This contract to terminate at any time by Stewart & Co. or myself giving fifteen days notice in writing to that effect.
“Yours, truly, James G. Clark.”
Plaintiffs wrote on this letter “Accepted,” and returned it to defendant, and the parties proceeded to carry out the contract thus entered into.
The price fixed in the contract was found to be too high to permit defendant to meet competition, and for several sales plaintiffs agreed to reduce it; but on March 13, 1901, plaintiffs instructed defendant to adhere in future sales strictly to the price fixed in the contract. Defendant in no way contested the right of plaintiffs to do this, and thereafter made no sales, the price being too high.
The stateménts of the business furnished by defendant were not satisfactory to plaintiffs, and, the representatives of plaintiffs in Louisiana not succeeding in getting from defendant a satisfactory account of the business, a Mr. Rowan came to New Orleans from the St. Louis office of plaintiffs for the express purpose of getting a settlement from defendant. Failing to get such settlement, this representative on October 24,1901, wrote defendant a letter putting an end to the contract. This letter contained the following clauses, among others:
“We will at once take possession of our sand and gravel now on the bank in this city, and will pay you your commission on same. Should you have any contracts that will require any of this material we will deliver it on your order, provided the parties are responsible, the price, in accordance with our contract, and they settle with us direct.
“If you have made any sales of gravel for future delivery although there is no legal obligation on our part under the contract with you to furnish this gravel, nevertheless, if you will furnish us with copies of said contract we will carry them out for you, and allow you your commission of 10 cents per cubic yard, provided, said contracts are satisfactory to us and we consider the parties to whom we are to deliver the gravel responsible, and they agree to settle with us direct.”
Defendant recognized the right of plaintiffs to put an end to the contract at any time on giving 15 days’ notice, but did not pay over the amount of money due, and did not furnish the names of any persons with whom he had contracts, and refused to surrender the gravel he had on hand. This suit followed, for an accounting.
At this termination of the contract, defendant had received 16,082.7 cubic yards of gravel, and had sold and delivered, with the consent of plaintiffs, to persons not named, 6,716.7 cubic yards, for the net amount, after deducting his commissions, of $6,646.14. He had on hand 9,366 yards, and, with the consent of plaintiffs, had contracted to deliver to the National Contracting Company, at $1.20 per yard, a quantity not fixed with any certainty in the record. Under this contract he afterwards delivered 6,300 yards, making a sum of $6,930, after deduction of his commission of 10 cents per yard. Thus far there is no contest.
The remaining 3,066 yards were afterwards disposed of by defendant without consulting plaintiffs, and at what price, and to whom, the record does not show. Questioned on the subject, defendant answered he did not know. He accounts for this gravel at $1.20 per yard. But if he sold it at that price, he did so in direct and flagrant violation of the contract, by which the lowest price was to be $1.35. Plainly, he must account for this gravel at the latter price; making an amount, *255 after deducting Ms commission of 10 cents per yard, of $3,382.50.
Defendant owes these amounts, less the credits he is entitled to. These are the following: Payments, as per statements P 23, ■24, 25, and 26 (Record 64, 65, 66, 67, 68, and 69), $1,756.04; amount collected by plaintiffs from National Contracting Company for gravel delivered by defendant, $5,639; statement annexed to answer, less items 1, 11, 12, 14, and 15, $173.98. As to these credits there is no dispute.
We will now consider the other credits claimed by defendant. And first as to the items 1, 11, 12, 14, and 15 of the statement annexed to the answer.
Item 1 is offset by a credit, so we leave it ■out of computation.
Item 11, for watchman, is disallowed, for the reason that the only expenses which plaintiffs were to be responsible for, under the-contract, were “wharf or port charges,” and for the further reason that the expense was incurred after the contract had terminated, and after plaintiffs had offered to take charge of the gravel, and pay defendant his commissions, and carry out any contracts entered into by him for future delivery, and defendant had refused to surrender the gravel.
Eor the same reasons the items appearing on the statements “DS” (Record, 341) and “DM” (Record, 342), except the last item of statement “DM” $5,774, are disallowed. This last item we shall notice more particularly hereafter.
Item No. 12, “Printing coupons, books, and circulars, $27.50,” is disallowed, for the same above reason that by the contract plaintiffs were not to be responsible for any expenses except port and wharf charges.
Item 14 is also disallowed. The learned judge a quo says of it: “Item 14 is for a loss of gravel made under an arrangement between plaintiffs and the Louisiana Improvement Company. But it did not affect. defendant in any way. His statements show him to have been in possession o,f 3.7 cubic yards more gravel than he was originally charged with. It will be disallowed.” We agree with this. It is needless to relate the whole business here.
Item No. 15 is worded as follows: “Amount commissions on 4,000 yards monthly, February to November inst., at $400 per month, 4,000, less amount charged on account sales $579.02, $3,420.98.” The theory on which this claim is advanced is that plaintiffs were obligated to furnish 4,000 cubic yards monthly, and that if this quantity of gravel had been furnished, and if plaintiffs had consented to sell it at less than $1.35, the price fixed in the contract, defendant could have sold it and realized these commissions. The answer is obvious. Plaintiffs, in the first place, were under no obligation to furnish 4,000 yards of gravel monthly, and, in the second place, were under no obligation to reduce the contract price. Defendant does not deny that there was always on hand more gravel thán he could dispose of at the contract price.
The last item of statement “DM” (Record, 342) is worded as follows: “Gravel furnished to National Contracting Company and not paid for, as per statement to them July 25th, 1902, $5,774.00.” Every yard of gravel delivered by defendant to the National Contracting Company is accounted for by payments made to defendant directly by the National Contracting Company, and by the $5,639.70 credited to defendant herein above as having been received by plaintiffs from the said company.
After the termination of the contract, plaintiffs sold' to the National Contracting Company, 5,317 yards of gravel, and to Nash & Dowdle 1,100 yards. Defendant claims his commission of 10 cents per yard on these sales. We think he is entitled to the commission on the gravel sold to the National Contracting Company, the transaction with that company having been virtually nothing *257 more Ilian a carrying out of the contract entered ' into by defendant. The transaction with Nash & Dowdle stands on a different footing, and defendant has no claim growing out of it.
Recapitulation.
6,716.7 yards sold and delivered before termination of contract....................... $ 6,616 14
6,300 yards sold to National Contracting
Company ................................... 6,930 00
3,066 yards sold, after the termination of tbe contract, to parties whose names are not given .................................. 3,832 52
Total ..................................... $17,408 66
Credits.
Payments as per Exhibits P 23 to
26 (Rec. pp. 64 to 69)............$1,756 04
Amount paid plaintiff by National
Contracting Company ........... 5,639 00
Items 2 to 10, inclusive, and item 13 of statement annexed to answer .............................. 173 98
Commissions on sale to National
Contracting Company ........... 531 70
-- 8,100 72
Bal. due by defendant................... $ 9,307 94
The judgment of the lower court was for $8,908.54. Plaintiffs filed an answer in this court asking that it be increased to $9,838.64. We find .that it should be increased as above.
It is therefore ordered, adjudged, and decreed that the judgment appealed from he increased to $9,307.94, and that, as thus amended, it be affirmed. Defendant to pay all costs.